**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE FACTOR VIII OR IX CONCENTRATE BLOOD PRODUCTS LITIGATION | MDL No. 986<br>No. 93 C 7452<br><br>This document relates to:<br><br>Gullone, et al. v. Bayer Corp., et al.,<br>Case No. 03-cv-08928<br><br>Georg, et al. v. Bayer Corp., et al.,<br>Case No. 05-cv-02433 |

**OPPOSITION TO *FORUM NON CONVENIENS* MOTION**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .............................................................. 1

II.   STATEMENT OF FACTS .................................................. 1

     A.    Plaintiffs' Claims ................................................... 2

     B.    Hepatitis C ............................................................ 2

III.  LEGAL STANDARD.......................................................... 3

IV.  ARGUMENT ..................................................................... 4

     A.    Germany Is Not An Adequate Forum Because Plaintiffs' Claims Could Not Effectively Be Litigated There................................. 4

     B.    Germany Is Not An Adequate Forum Because German Courts Will Not Accept Jurisdiction Once German Plaintiffs Have Chosen To Litigate In U.S. Courts. ............................................... 6

     C.    Plaintiffs' Choice Of Forum Should Be Granted Maximum Deference. ............................................................ 7

          1.    The 1954 Treaty Of Peace, Friendship, Navigation, And Commerce Between Germany And The United States Entitles German Plaintiffs' Choice Of Forum To Maximum Deference. ............................................................ 7

          2.    Plaintiffs' Forum Choice Was "Dictated By Reasons That The Law Recognizes As Valid."................................... 8

     D.    The Balance Of Private Interest Factors Weighs Against Dismissal......... 9

          1.    Relative Ease Of Access To Sources Of Proof............................. 9

          2.    Availability Of Compulsory Process For Attendance Of Unwilling Witnesses ..................................................... 10

          3.    Ability To Join Third-Party Defendants ...................................... 12

          4.    All Other Practical Problems That Make A Trial Of A Case Easy, Expeditious And Inexpensive ........................................... 13

               a.    Enforcement Of Judgment ............................................. 13

               b.    Translation of Evidence ................................................. 14

     E.    The Balance of Public Interest Factors Weighs Against Dismissal......... 15

          1.    The Administrative Difficulties Of This Litigation Are Far Greater In Germany. .................................................... 15

**TABLE OF CONTENTS**
**(continued)**

Page

a.  Defendants Have Not Demonstrated Reduced Court Congestion And Delay In German Courts. ...................... 15

2.  German Interests In This Litigation Do Not Outweigh U.S. Interests. ........................................................................................ 17

a.  Defendants' Home Forum Has A Strong Interest In Providing Redress. ........................................................... 17

b.  U.S. Forums Have A Local Interest In This Litigation. ......................................................................... 19

c.  The Jury Service Question Is Not Applicable To These Cases. ................................................................... 20

3.  U.S. Law Will Apply To These Cases. ....................................... 21

V.  CONCLUSION ..................................................................................... 23

# TABLE OF AUTHORITIES

**Page**

## CASES

*Carlenstolpe v. Merck & Co., Inc.,*
  638 F.Supp. 901 (S.D.N.Y. 1986) .......................................................................... 18

*Chan Tse Ming v. Cordis Corp.,*
  704 F.Supp. 217 (S.D. Fla. 1989) .......................................................................... 16

*DiRienzo v. Philip Servs. Corp.,*
  294 F.3d 21 (2d Cir. 2002) cert. denied, 537 U.S. 1028 (2002) .......................... 4, 11

*ESI, Inc. v. Coastal Power Production Co.,*
  995 F.Supp. 419 (S.D.N.Y. 1998) .......................................................................... 16

*Gassner v. Stotler & Co.,*
  671 F. Supp. 1187 (N.D. Ill., 1987) ........................................................................ 22

*General Motors Corp. v. Ignacio Lopez de Arriortua,*
  948 F. Supp. 656 (E.D. Mich. 1996) ....................................................................... 16

*Gulf Oil v Gilbert,*
  330 U.S. 501 (1947) .................................................................................................. 9

*Gullone v. Bayer Corp., et. al.,*
  484 F.3d 951 (7th Cir. 2007) ......................................................................... passim

*Gupta v. Austrian Airlines,*
  211 F. Supp. 2d 1078 (N.D. Ill. 2002) ................................................................... 10

*Herbstein v. Bruetman,*
  743 F.Supp. 184 (S.D.N.Y. 1990) .......................................................................... 10

*In re Assicurazioni Generali S.p.A. Holocaust Ins. Litigation,*
  228 F.Supp. 2d 348 (S.D.N.Y. 2002) ..................................................................... 11

*In re Bridgestone/Firestone Inc., Tire Products Liability Litigation,*
  190 F. Supp. 2d 1125 (S.D. Ind. 2002) ........................................................... passim

*In Re Bridgestone/Firestone, Inc.,*
  305 F. Supp. 2d 927 (S.D. Ind. 2004) .................................................................... 13

*In re Factor VIII or IX Concentrate Blood Products Litigation,* Ruling on Motion for Class

**TABLE OF AUTHORITIES**
**(continued)**

Page

Certification, March 1, 2005
2005 WL 497782 (N.D. Ill.) ................................................................................................ 9

*In Re Ford Motor Company, Bridgestone/Firestone North American Tire, LLC,*
344 F.3d 648 (7th Cir. 2002) ................................................................................. 3, 4, 6, 8

*In re Paris Air Crash of March 3, 1974,*
399 F.Supp. 732 (C.D. Cal. 1975) ...................................................................................... 18

*In re Sunrise Securities Litigation,*
698 F.Supp. 1256 (E.D. Pa. 1988) ...................................................................................... 22

*Iragorri v. United Technologies Corp.,*
274 F.3d 65 (2d Cir. 2001) .................................................................................................. 8

*Irish National Ins. Co. Ltd. v. Aer Lingus Teoranta,*
739 F.2d 90 (2d Cir. 1984) .................................................................................................. 7

*ISI Intern., Inc. v. Borden Ladner Gervais LLP,*
256 F.3d 548 (7th Cir. 2001) .............................................................................................. 3

*Kamel v. Hill-Rom Co.,*
108 F. 3d. 799 (7th Cir. 1997) ....................................................................................... 4, 22

*Klaxon Co. v. Stentor Electric Mfg. Co.,*
313 U.S. 496 (1941) ........................................................................................................... 22

*Kozoway v. Massey-Ferguson, Inc.,*
722 F.Supp. 641 (D. Colo. 1989) ....................................................................................... 18

*Ludgate Insurance Company Limited v. B. Frederick Becker,*
906 F.Supp. 1233 (N.D.Ill. 1995) ....................................................................................... 4

*Nun v. Telectronics Pacing Systems, Inc.,*
1994 WL 361488 (S.D.N.Y. July 11, 1994) ....................................................................... 9

*Piper Aircraft v. Reyno,*
454 U.S. 235 (1981) ............................................................................................................. 3

*Pliva d.d. v. Baxter Int'l, Inc.,*
2004 WL 2011391 (N.D. Ill. 2004) ............................................................................. 16, 19

*Reid-Walen v. Hansen,*

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

933 F.2d 1290 (8th Cir. 1991) ............................................................................... 12, 17

*Simon v. Philip Morris, Inc.*,
    124 F. Supp. 2d 46 (E.D.N.Y. 2000) ........................................................................ 18

*Volkswagen de Mexico, S.A. v. Germanischer Lloyd*,
    1991 WL 230622 (S.D.N.Y. 1991) .......................................................................... 21

**OTHER AUTHORITIES**

7 U.S.T. 1839 .......................................................................................................................... 7

Richard A. Posner, *Law and Legal Theory in the U.K. and the USA* (1996) ............................... 20

## I.    INTRODUCTION

The claims of the German plaintiffs should not be dismissed on *forum non conveniens* ("*fnc*") grounds.  An *fnc* dismissal will terminate the litigation either expressly for individuals who cannot rely on 'but for' causation to establish their claims in German courts or *de facto* for those who will not have the persistence, resources or stamina to institute new proceedings, engage new counsel, and await an outcome in Germany for which additional American proceedings may be required to enforce a judgment.  In theory, an *fnc* analysis begins with the recognition that the plaintiffs' forum selection should not be disturbed and ends with the burden of proving otherwise placed squarely on the movant.  In practice, here, *fnc* has been Defendants' principal tool in their litigation toolbox to hammer Plaintiffs whose claims, as the Seventh Circuit has confirmed in *Gullone v. Bayer Corp., et. al.*, 484 F.3d 951, 953 (7th Cir. 2007) ("*Gullone II*"), have meaningful links to the United States and to destroy any hopes they might have of their day in court.  In this case, as has been often repeated – ***this case, not an academic exercise*** – Germany is an inadequate forum, and the balance of private and public factors does not tilt in favor of dismissal, especially when Plaintiffs' forum selection is granted the requisite maximum deference.  For the reasons further set out below, the Court should deny Defendants' motion.

## II.    STATEMENT OF FACTS

Plaintiffs are German hemophiliacs, their spouses, parents and their survivors who were infected with HIV and/or hepatitis C ("HCV") as a result of their treatment with contaminated Factor Concentrates.  This contamination was the result of Defendants' fraudulent misconduct in the United States.[1]

---

[1] Defendants claim that some German Plaintiffs never used Defendants' factor concentrates.

*Footnote continued on next page*

### A. <u>Plaintiffs' Claims</u>

Plaintiffs allege that Defendants knew in the late 1970s and early 1980s that deadly viruses contaminated their Factor Concentrates yet failed to disclose fully and completely the known risks of their products, including the risk of AIDS and HCV. *Georg Compl.*, ¶¶87-90. Moreover, Defendants failed to implement readily available screening tests and methods of treating plasma that would have prevented AIDS and HCV either by excluding contaminated plasma from their stockpiles or killing viruses in contaminated plasma they had already collected. *Id.*, ¶¶102, 109-118.

Plaintiffs further claim that Defendants fraudulently misrepresented that Factor Concentrates were safe to use and that the companies had undertaken serious, timely, and effective efforts to reduce the risk of AIDS and HCV. For example, Plaintiffs allege that in order to manufacture and profit from other products requiring antibodies found in such donors, Defendants intentionally recruited urban homosexuals who had a history of viral hepatitis as plasma donors, despite regulations prohibiting the use of such donors and despite knowing that the viruses that cause AIDS and HCV were blood-borne diseases prevalent in such populations. *Id.*, ¶¶97-101. Plaintiffs also allege that pursuant to a "gentlemen's agreement," Defendants actively conspired to conceal these practices and to substantially delay product recalls and implementation of safety measures. *Id.* at ¶¶129-130, 132, 142

### B. <u>Hepatitis C</u>

The consequences of HCV infection are dramatic and often horrific. HCV is a liver disease which may result in cirrhosis, liver cancer and death. It is widely understood that

---

*Footnote continued from previous page*
However, while Defendants disclaim any affiliation with Immuno and Behring, - the products in question – Plaintiffs have alleged from the outset of the litigation that Baxter and Armour are liable for the injuries caused by Immuno and Behring products, respectively.

liver damage can occur faster and be more severe in circumstances where a patient has been co-infected with HCV and HIV. All 60 German Plaintiffs have HCV and 32 of those have both HIV and HCV.[2] The symptoms of and medications used to treat HCV and HIV themselves may and often do interact, leading to exacerbated liver conditions, blood abnormalities, such as anemia;, as well as nausea, fatigue, insomnia and depression. The Centers for Disease Control and Prevention (the "CDC"), an agency of the United States Department of Health and Human Services, expressly states that "recipients of clotting factors made before 1987" – precisely those at issue in this case – are at "high" risk of infection. *See* http://www.cdc.gov/Ncidod/diseases/hepatitis/c/fact.htm.

## III.    LEGAL STANDARD

Any analysis of *fnc* begins with the recognition that there is a strong preference for the plaintiff's forum choice which should only be disturbed under "rare circumstances." *ISI Intern., Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 553 (7th Cir. 2001). Defendants "bear the burden of persuading the district court that a lawsuit should not be dismissed on *fnc* grounds." *In Re Ford Motor Company, Bridgestone/Firestone North American Tire, LLC*, 344 F.3d 648, 652 (7th Cir. 2002). To do so, Defendants must demonstrate that a "trial in the plaintiff's chosen forum would be oppressive and vexatious to the defendants, [and] out of all proportion to the plaintiff's convenience." *Id; see also Piper Aircraft v. Reyno*, 454 U.S. 235, 241 (1981).

The Court must find that four factors combine to "clearly indicate that the [foreign] forum is superior," in order to conclude that this is the rare circumstance in which *fnc* may be equitably granted. *Bridgestone/Firestone*, 344 F.3d at 651 (7th Cir. 2002) (affirming *fnc*

---

[2] Only Plaintiff Edith Georg is claiming damages relating to HIV infection. All other co-infected plaintiffs are seeking damages related solely to HCV infection.

denial).  These are: "(1) the availability of an adequate alternative forum; (2) the appropriate deference to the plaintiff's choice of forum; (3) "private interest" factors; and (4) "public interest" factors."  *Ludgate Insurance Company Limited v. B. Frederick Becker*, 906 F.Supp. 1233,1236 (N.D.Ill. 1995) (denying *fnc*) (citing *Macedo v. Boeing Co.*, 693 F.2d 683, 686-690 (7th Cir. 1982) (reversing *fnc* grant)).  Finally, courts have consistently emphasized that the *fnc* analysis is "highly fact-specific."  *See Bridgestone/Firestone*, 344 F. 3d at 652; *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 33 (2d Cir. 2002) cert. denied, 537 U.S. 1028 (2002).  In this case and on these facts, Defendants have failed to meet their heavy burden of overcoming the strong preference for Plaintiffs' forum choice.

## IV.   ARGUMENT

### A.   Germany Is Not An Adequate Forum Because Plaintiffs' Claims Could Not Effectively Be Litigated There.

Germany is an inadequate alternate forum because Plaintiffs who cannot identify which Defendants' Factor Concentrates infected them, will be "deprived of all remedies" there. *Kamel v. Hill-Rom Co.*, 108 F. 3d. 799, 803 (7th Cir. 1997) (citing *Piper Aircraft*, 454 U.S. at 255).[3]  Since Germany does not recognize any causation theory other than 'but for' causation, those Plaintiffs will be unable to litigate their claims in Germany.  Contrary to the circumstances before this Court and the Seventh Circuit regarding this issue as to English and Welsh Plaintiffs, German courts have not "recognized the need to modify strict 'but for' rules in this kind of case." *Gullone II*, at 957-58.  The Seventh Circuit, in analyzing the U.K.'s adequacy as an alternative forum, placed strong emphasis on the U.K.'s willingness (announced in express terms by England's highest court) to consider expanding the "but for" causation rule employed by English courts.  *Id.*, (citing *Fairchild v. Glenhaven Funeral Servs., Ltd.*, (2003) 1 A.C. 32 (H.L.)).

---

[3] Plaintiffs do not challenge Defendants' contention that German courts are an available alternative forum.

By contrast, German Plaintiffs will receive no such "*Fairchild* exception" or other comparable benefit in Germany. Defendants can point to no possible alternative liability theories currently under consideration by either the legislatures or high courts in Germany.

> As opposed to U.S. law in some states, German law does not accept market share liability. Instead, German law adheres strictly to the "but-for" standard in causation issues. Accordingly, for the many German clients who are unable to identify which of the Defendants' products infected them, their claims will be barred.

*Declaration of Professor Hanno Merkt,*[4] ("*Merkt Decl.*"), ¶ 9. German courts will rely on a straightforward negligence theory when adjudicating these cases and will not recognize market share liability or any other, more flexible liability theories available in U.S. courts. Thus, Plaintiffs, if forced to re-file in Germany, will have the insurmountable burden of proving which Factor Concentrate from which specific Defendant infected each specific Plaintiff.

Germany's pharmaceutical law is also not nearly as robust as Defendants claim. Professor Erwin Deutsch, one of the most respected specialists in pharmaceutical products liability in Germany recently produced a Commentary on the German Pharmaceutical Act in which he "expressed his deep concern over the poor state of German pharmaceutical products liability practice." *Id.* ¶10. His general concerns about the Act are, for these purposes, overshadowed by his statement about its applicability to the substantive litigation at issue here. "The cases with HIV-infected blood products have clearly shown the limitations of the Pharmaceutical Act." *Id.* In this context, Defendants' statement that "German law provides a variety of **potential** remedies for plaintiffs asserting claims like those of the German plaintiffs, including possible causes of action under Germany's Pharmaceuticals Act and for negligence and fraud" is revealing and emblematic of the course of the *fnc* litigation between the parties.

---

[4] Plaintiffs' expert Hanno Merkt is Professor of Law and Director of the Institute of International and Comparative Law at the Albert-Ludwigs-Universität in Freiburg, Germany.

(*Memorandum In Support Of Defendants' Motion To Dismiss Plaintiffs' From Germany On Grounds Of FNC* ("*Defs' Mem.*"), at 6 (emphasis added)).  Defendants are content to proffer *potential* remedies and academic solutions in order to evict these claims from U.S. courts but, in reality, eviction is tantamount to the termination of these claims.

The courts of Germany therefore do not provide these Plaintiffs with an adequate alternative forum on these facts, and Defendants' motion to dismiss should be denied.

> **B.** **Germany Is Not An Adequate Forum Because German Courts Will Not Accept Jurisdiction Once German Plaintiffs Have Chosen To Litigate In U.S. Courts.**

Germany is also not an available forum because its courts will refuse to adjudicate claims, such as these, that have initially been filed in another jurisdiction.

> [I]f the plaintiff opts for [the court where the tortious conduct took place], the court where the damage occurs has no jurisdiction to hear the case. Accordingly, since the plaintiffs in the current case have opted for the U.S. courts, German courts are not competent to hear the case.

*Merkt, Decl.* ¶ 6.  In this context, *fnc* dismissal will terminate the litigation for these Plaintiffs. Once a German Plaintiff exercises his or her free will and elects to file suit in a court which possesses jurisdiction, concurrent jurisdiction in other possible fora is forfeited.  Plaintiffs are not aware of any instance in which the German courts have exercised jurisdiction over a claim against an American defendant after its dismissal from a U.S. court on *fnc* grounds.

The Seventh Circuit recently affirmed a similar ruling on the unavailability of Venezuela as an alternative forum for product defect claims brought by Venezuelan plaintiffs against a U.S. auto manufacturer.  *In re Ford Motor Company*, 344 F. 3d 648 (7th Cir. 2002), affirming *In re Bridgestone/Firestone Inc., Tire Products Liability Litigation*, 190 F. Supp. 2d 1125 (S.D. Ind. 2002).  In that case, the district court (Barker, J.) held that a Venezuelan statute permitting jurisdiction over a foreign entity where "the parties submit to the jurisdiction of

Venezuelan courts" would not be sufficient to establish jurisdiction over a U.S. defendant in Venezuela after a U.S. court's dismissal on *fnc* grounds, even were that dismissal conditioned on the defendant's consent to Venezuelan jurisdiction, because the Venezuelan statute requires the acquiescence of *both* parties to Venezuelan jurisdiction. 190 F. Supp. 2d at 1130-31.

Accordingly, this Court should find that Defendants have failed to meet their burden of demonstrating how or why Germany would present an adequate and more convenient forum for the adjudication of Plaintiffs' claims and decline to dismiss the German Plaintiffs from this case.

### C.   Plaintiffs' Choice Of Forum Should Be Granted Maximum Deference.

#### 1.   The 1954 Treaty Of Peace, Friendship, Navigation, And Commerce Between Germany And The United States Entitles German Plaintiffs' Choice Of Forum To Maximum Deference.

The forum choice of German Plaintiffs is entitled to maximum deference. Pursuant to the 1954 Treaty of Peace, Friendship, Navigation and Commerce between Germany and the U.S. (the "1954 Treaty"), German citizens enjoy free and open access to U.S. courts and are entitled to the same rights and privileges as American citizens. Article VI of the 1954 Treaty provides:

> Nationals and companies of either Party shall be accorded national treatment with respect to access to the courts of justice and to administrative tribunals and agencies within the territories of the other Party, in all degrees of jurisdiction, both in pursuit and in defense of their rights.

7 U.S.T. 1839. This is significant as the Seventh Circuit directed that, when evaluating the connection between the litigation and Plaintiffs' chosen forum, the trial court should be mindful of the "many treaties the United States has signed as well as with the general principle that our courts are open to all who seek legitimately to use them." *Gullone II*, 484 F.3d at 956. Other courts have also recognized the significance international treaties have in the *fnc* analysis. In *Irish National Ins. Co. Ltd. v. Aer Lingus Teoranta*, 739 F.2d 90, 91-92 (2d Cir. 1984) (the

Second Circuit reversed dismissal on *fnc* grounds because the trial court failed to consider a similar treaty between Ireland and the U.S. which entitled Irish plaintiffs to equal access to U.S. courts).

### 2.    Plaintiffs' Forum Choice Was "Dictated By Reasons That The Law Recognizes As Valid."

Defendants' persistent accusations that Plaintiffs filed their claims in the U.S. in an effort to take advantage of U.S. damages awards are wrong and at odds with the case law and the facts.  Plaintiffs' forum choice was based entirely on *bona fide* connections to the U.S.  First, there was nothing nefarious or sinister about German Plaintiffs' decision to issue proceedings here.  Indeed, as Defendants' expert concedes, it is standard for German plaintiffs to file a lawsuit "at the place where the defendant acted," in other words, in the United States.  *See Declaration of Joachim Zekoll,* ("*Zekoll Decl.*"), ¶ 12.  *See also, Merkt Decl.*, ¶ 7.  There is no dispute that the location of the wrongdoing was in the U.S. and Defendants are headquartered in California and Illinois.  Second, it is hardly inequitable to hold U.S. corporate Defendants to U.S. substantive laws and procedural rules for the corporate decisions they make, and conduct they implement, in the U.S.  Third, the U.S. is the forum in which Defendants have faced numerous similar suits and where relevant parties and witnesses are accessible.  Fourth, the majority of the evidence of Defendants' wrongdoing is located in the U.S.  The Seventh Circuit, in *Bridgestone/Firestone*, 344 F. 3d at 653 has recognized the deference principles established by *Iragorri v. United Technologies Corp.*, 274 F.3d 65, 71-72 (2d Cir. 2001) (en banc): "[T]he more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice."  Because all of the  reasons for Plaintiffs' forum choice are those which "the law recognizes as valid," this Court should grant Plaintiffs' forum choice maximum deference.

**D.     The Balance Of Private Interest Factors Weighs Against Dismissal.**

All private interest factors favor retention of U.S. jurisdiction.  The *fnc* private interests analysis considers: the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling witnesses; the cost of obtaining willing witnesses; the possibility of a view of the premises, if appropriate; and all other practical problems that make a trial of a case easy, expeditious and inexpensive.  *Gulf Oil v Gilbert*, 330 U.S. 501, 508 (1947).

**1.     Relative Ease Of Access To Sources Of Proof**

The essential proof necessary to prove Plaintiffs' allegations is located in the U.S. When evaluating the relative ease of access to proof, courts consider the gravamen of the claims. Here, "the gravamen of the second generation claims is not negligence but fraud and other intentional misconduct."  *In re Factor VIII or IX Concentrate Blood Products Litigation*, Ruling on Motion for Class Certification, March 1, 2005, p.1, fn.1, 2005 WL 497782 (N.D. Ill.).  The substance of Plaintiffs' claims is chiefly concerned with Defendants' actions and wrongdoing. "Courts considering similar products liability actions have generally denied motions to dismiss on [*fnc*] where evidence pertaining to the liability is primarily in the United States forum." *Nun v. Telectronics Pacing Systems, Inc.*, 1994 WL 361488, at *3 (S.D.N.Y. July 11, 1994).  In this case, all liability evidence is already located in the U.S. before the MDL.

The "massive amount of evidence" (as Defendants describe it) already gathered in the United States before the MDL will be wasted should *fnc* be granted and Plaintiffs forced to re-file numerous separate actions in Germany.  Professor Merkt confirms – as Defendants' expert Professor Zekoll concedes – that in typical German litigation, a party need not disclose to an adversarial party discovery items of which his opponent is unaware and which would be subject to automatic disclosure under the Federal Rules of Civil Procedure.  *Merkt Decl.*, ¶10.

- 9 -

Defendants' agreement to advise the German courts that they do not object to evidence simply because it was gathered outside of Germany is meaningless. German judges in numerous German courts will need to determine by judicial order on a case by case basis whether the document being sought by the party is relevant (as well as whether its contents and location have been adequately described). *Id.*

Defendants' expert confirms that "if these cases were to remain in the United States, discovery of evidence located in Germany would be limited to discovery available under the Hague Convention." *Zekoll Decl.*, ¶ 30. However, "German courts would be willing to, and on a regular basis, provide through Letters Rogatory discovery sought for U.S. litigation that is sufficiently identified." *Merkt Decl.*, ¶ 12. Discovery located in Germany will clearly be available to Defendants litigating in the U.S.

**2.      Availability Of Compulsory Process For Attendance Of Unwilling Witnesses**

Defendants fail to meet their burden of identifying which, if any, non-party German witnesses would be compelled to attend a U.S. trial. Courts have consistently held that simply listing only a few generic categories of witnesses is insufficient for these purposes. *Gupta v. Austrian Airlines*, 211 F. Supp. 2d 1078, 1087 (N.D. Ill. 2002) ("[D]efendants have not identified any specific witness who refuses to submit to discovery here, and some of these witnesses may be willing to testify here"); *Herbstein v. Bruetman*, 743 F.Supp. 184, 189 (S.D.N.Y. 1990) ("[D]efendants have not indicated that any of the likely Argentine witnesses would not be willing to testify in the United States").

Moreover, Defendants fail to show that the witnesses they claim to be necessary to their case would be unavailable for or unwilling to attend trial in the United States. Defendants merely state without any support that "[n]o third party witness in Germany has any

reason to come to the United States to testify at trial in an American court." *"Defs' Mem.*" at 9. This is insufficient to meet their burden on this motion. *See In re Assicurazioni Generali S.p.A. Holocaust Ins. Litigation*, 228 F.Supp. 2d 348, 362 (S.D.N.Y. 2002) ("[D]efendants have not even established that these witnesses will be unwilling to travel voluntarily to this district"); *In re Bridgestone/Firestone*, 190 F. Supp. 2d at 1140, 1141 n.22 (Defendants fail to address issues of willingness of foreign witnesses to voluntarily travel here).

Compulsory process for taking evidence from unwilling witnesses is much improved since this private interest factor was delineated by the Supreme Court in *Gulf Oil*. Specifically, the Hague Convention facilitates evidence-gathering from an unwilling foreign national in a Convention country. The Hague Convention is currently in force between the U.S. and Germany and could be utilized by Defendants in this action.[5]

Defendants have not established why live testimony of unwilling witnesses, rather than depositions obtainable via the Hague Convention, is required. It is well established — though Defendants do not acknowledge it — that a party's need to rely on depositions obtained under the Hague Convention will not render a U.S. forum inadequate. *DiRienzo*, 294 F.3d at 30 ("[V]ideotaped depositions, obtained through Letters Rogatory, could afford the jury an opportunity to assess the credibility of these Canadian witnesses."); *In re Assicurazioni Generali S.p.A. Holocaust Ins. Litigation*, 228 F. Supp. 2d at 362 ("Numerous courts have held that the use of international Letters Rogatory is a viable alternative to *fnc* dismissal"); *In re Bridgestone/Firestone*, 190 F. Supp. 2d at 1140. (Defendants that believe credibility of foreign witnesses will be in issue can videotape depositions.)

If Defendants are able to demonstrate which witnesses would be necessary and

---

[5] *See http://travel.state.gov/law/info/judicial/judicial_648.html*

unwilling to testify here, and why depositions of those witnesses would not suffice, the Court must examine the comparative importance of witnesses available here and in Germany. *See, e.g.*, *Reid-Walen v. Hansen*, 933 F.2d 1290, 1396 (8th Cir. 1991) ("[T]he district court must examine the materiality and importance of the anticipated witnesses' testimony and then determine their accessibility and convenience to the forum."). Liability is the crux of these cases and the vast majority of liability witnesses essential to proving Plaintiffs' case are located in the U.S.: specifically, witnesses to research, development, design, production, testing, marketing, distribution, shipment, donor recruitment and screening, federal regulations and standards of care, and solvent detergent and heat treatment methods of viral inactivation. Extensive time and resources already have been expended taking hundreds of liability depositions that, if they were admissible in German proceedings, would be extremely costly to translate.

Considerations of expense and convenience in obtaining witnesses and evidence favor the U.S. forum. *See In re Bridgestone/Firestone*, 190 F.Supp. 2d at 1140-1141, wherein the court found that the evidence in Colombia relating to damages did not outweigh the U.S.-based liability evidence. In evaluating private interest factors, cases should be addressed individually rather than en masse.

As with other factors pertinent to the private interest factor analysis, the burden of demonstrating, not just theorizing, that necessary witnesses will be unwilling to testify rests with Defendants. Since they have failed to make this showing, the case cannot be dismissed.

### 3. Ability To Join Third-Party Defendants

In an attempt to frustrate Plaintiffs' forum choice, Defendants argue that their inability to join third party defendants is a factor that should weigh in favor of dismissal. Defendants are eager to point out that the Seventh Circuit cited this factor in affirming this Court's decision with respect to the U.K. cases. January 5, 2006 Memorandum Opinion ("Mem.

Op."); see *Gullone II*. However, Defendants' arguments must be reviewed in light of the history

of this litigation. Defendants purportedly fear that they will be unable to implead German blood

banks or other foreign companies that they believe may have been responsible for Plaintiffs'

infections. This position is untenable in light of the twenty-year history of hemophilia AIDS

litigation and the fact that Defendants have never once impleaded any third parties even though

most hemophiliacs — both in the U.S. and in Germany— have used blood products

manufactured by other parties as well as Defendants. As in the U.K. analysis, this Court should

conclude that Defendants' impleader argument is based solely on conjecture and must be given

no weight.[6]

**4.      All Other Practical Problems That Make A Trial Of A Case Easy, Expeditious And Inexpensive**

**a.      Enforcement Of Judgment**

"Enforceability of a judgment" is a factor critical to the determination of the

forum in which the trial could proceed most easily, expeditiously, and inexpensively. *See In Re*

*Bridgestone/Firestone, Inc.*, 305 F. Supp. 2d 927, 936 (S.D. Ind. 2004). This factor favors the

U.S. as the appropriate forum since Defendants may not have assets in Germany and Plaintiffs

would, therefore, be unable to enforce judgment there. If the case remained in the U.S., the

known location of Defendants' principal assets, a final judgment would certainly be enforceable.

Were German Plaintiffs able to sue in Germany and were to obtain a judgment

after years of protracted litigation, Plaintiffs would be forced to file another action in the U.S.,

one in which Defendants could attack the jurisdiction and adequacy of German courts. *Merkt*

*Decl.*, ¶14. The U.S. court might then refuse to enforce the foreign judgment for some of the

---

[6] Defendants may, if appropriate, maintain an action for contribution or indemnity against potential third party defendants in Germany if they are found liable after a U.S. trial.

very reasons Plaintiffs are opposing Defendants' instant motion.

Additionally, Plaintiffs, many of whom are in failing health, may not be alive to see the final outcome of this litigation. Effectively, they will have been forced to litigate a total of three separate lawsuits: the present one, one before a German court, and another one before a U.S. judge in order to enforce the judgment entered by the German court. Conducted in such a manner, the entire process will take an unconscionably long time to resolve. Certainly the interests of justice and convenience of the parties cannot weigh in favor of creating such a situation, especially when Plaintiffs' original forum choice is entitled to substantial deference.

### b.       Translation of Evidence

Another private interest consideration that weighs against dismissing these cases on *fnc* grounds is the issue of translation of evidence. Contrary to the claims of Defendants' expert, most, if not all, German courts would expect English-language documents to be translated into German.

> [I]n a complex and fact-intensive mass tort case with exhaustive taking of documentary evidence and oral testimony by pharmaceutical and medical experts, no German judge would adjudicate just on the basis of English original documents. The risk of being reversed on appeal for lack of language expertise would be much too high.

*Merkt Decl.*, ¶17. Defendants refer to the limited number of exhibits entered into evidence in the *Poole* case, tried before this Court. *Defs. Mem.* at 10-11. This is hardly relevant. That case and one involving German Plaintiffs are distinct and the number of exhibits used in the former has no bearing on the scope of evidence to be introduced in the latter. Further, regardless of how many and which documents ultimately are introduced into evidence in Court, they are always a small fraction of the documents reviewed by counsel, experts and the plaintiffs themselves. All of these would need to be translated from English into German. The cost of doing so, especially for

individual plaintiffs, would be forbidding and would have an additional chilling effect on the possible re-filing of litigation in Germany.

For all of these reasons, the balance of private interest factors weighs in favor of retaining U.S. jurisdiction.

### E. The Balance of Public Interest Factors Weighs Against Dismissal

The balance of public interest factors weighs heavily against dismissal on *fnc* grounds. The factors, as articulated by the Seventh Circuit, are: 1) the "administrative difficulties" involved in proceeding in each potential forum, with a preference against jury duty for "the people of a community which has no relation to the litigation", 2) the relative interests of each potential forum, including "a local interest in having localized controversies decided at home," and 3) a preference for "trials in a forum that is at home with the … law that must govern the case." *Gullone II*, at 955, (citing *American Dredging Co. v. Miller*, 510 U.S. 443, 447-49 (1994)). As discussed below, each of these factors militates against dismissal.

### 1. The Administrative Difficulties Of This Litigation Are Far Greater In Germany.

The Seventh Circuit held that a silent record as to "the relative administrative advantages or disadvantages of [the U.S.] and [foreign forum] . . . [renders] this factor neutral." *Gullone II*, 484 F.3d at 959. A "neutral factor" — where the burden lies on Defendants — is fatal to their claims. Defendants present no compelling comparative evidence of administrative difficulties in the U.S. forum.

### a. Defendants Have Not Demonstrated Reduced Court Congestion And Delay In German Courts.

In order to prevail, Defendants must prove that there is less congestion and delay in the German court system than in the U.S. district courts where the cases were filed. Defendants offer no comparative figures concerning the two court systems, and this does not

satisfy their burden of persuasion. *See, e.g.*, *Pliva d.d. v. Baxter Int'l, Inc.*, 2004 WL 2011391, at

*6 (N.D. Ill. 2004) ("Regarding docket congestion, the court considers it relative to the

congestion of other potential venues"); *ESI, Inc. v. Coastal Power Production Co.*, 995 F.Supp.

419, 428 (S.D.N.Y. 1998) ("Coastal has not demonstrated that litigation in El Salvador would

proceed substantially more swiftly"); *Chan Tse Ming v. Cordis Corp.*, 704 F.Supp. 217, 220

(S.D. Fla. 1989) ("Although the courts in this district are undoubtedly congested, the Defendant

has failed to demonstrate that the Hong Kong forum would administer justice in a swifter

fashion").

  As Plaintiffs' expert, Professor Merkt, points out, Defendants' ambitious

timetable for this litigation is stated simply in the abstract. "[T]he current [case] is a complex

and fact-intensive mass tort case" rather than the "average" civil case on which Defendants'

figures are based. *Merkt Decl.*, ¶ 15. Therefore, rather than seven to eight months, the case

would more likely take several years. *Id.* "Plaintiffs claim that a civil case in Germany may take

seven years to complete." *General Motors Corp. v. Ignacio Lopez de Arriortua*, 948 F. Supp.

656, 668 (E.D. Mich. 1996) (denying German *fnc* motion). In fact, "given the two-fold appeal

proceeding [in Germany], it is possible, or even probable, that an U.S. proceeding would be

speedier than a proceeding before a German court." *Id.* As the Seventh Circuit noted in

affirming the *fnc* dismissal as to the U.K. Plaintiffs, "[t]o the extent court congestion matters,

what is important is the speed with which a case can come to trial and be resolved." *Gullone II*,

484 F.3d at 12-13 (citing *Gates Learjet Corp. v. Jensen*, 743 F. 2d 1325, 1337 (9th Cir. 1984)

("[t]he real issue is not whether a dismissal will reduce a court's congestion but whether a trial

may be speedier in another court because of its less crowded docket.")).

  Moreover, German courts lack any system similar to those in the U.S. designed to

handle the complexities inherent in mass tort litigation. *Merkt Decl.*, ¶ 12. Upon re-filing these actions in Germany, the currently streamlined group of German Plaintiffs would be fragmented among tens of German judges, resulting in wide disparity among numerous courts with regards to discovery, pre-trial and other procedural as well as substantive decisions.

### 2. German Interests In This Litigation Do Not Outweigh U.S. Interests.

Germany and the United States are both interested in this action. The United States has a compelling interest in deterring American manufacturers from creating and distributing defective products by providing a forum for persons, including foreign nationals, injured by those products. Plaintiffs do not dispute that Germany has an interest in protecting its citizens from injuries caused by defective products, and in ensuring that they are adequately compensated for their injuries. Indeed, as the Seventh Circuit held:

> In the end, a rational person might come to either conclusion on this record: some might think that the greater interest lies in the place where the companies operated and allegedly committed the wrongs; others might find a greater interest in the place where the victims suffer from those wrongs and where the financial impact of the consequences will fall.

*Gullone II*, 484 F.3d at 959. Defendants proffer nothing that conclusively weighs in favor of Germany's interest.

### a. Defendants' Home Forum Has A Strong Interest In Providing Redress.

Case law is replete with decisions that highlight U.S. interest in product liability claims. "The defendant's home forum always has a strong interest in providing a forum for redress of injuries caused by its citizens." *Reid-Walen*, 933 F.2d at 1400.

> This court finds that where an allegedly defective drug has been developed, tested and manufactured in the United States, and is being distributed to and presumably used by American citizens, including citizens of the forum, the forum's interest in litigating the controversy is at least equal to the foreign citizen's home forum.

- 17 -

*Carlenstolpe v. Merck & Co., Inc.,* 638 F.Supp. 901, 909 (S.D.N.Y. 1986). *Accord Simon v. Philip Morris, Inc.*, 124 F. Supp. 2d 46, 61 (E.D.N.Y. 2000) ("In the products liability line of conflicts cases, causative misconduct plays a strong role in pinpointing what law to apply when transitory goods hurt people"); *Kozoway v. Massey-Ferguson, Inc.*, 722 F.Supp. 641, 644 (D. Colo. 1989) ("The United States has a legitimate interest in assuring that domestic law is applied when a foreign plaintiff claiming to have been injured by an American corporation chooses a court in this country in seeking redress"). In this era of national dependence on global markets, the United States also has an obvious interest in ensuring that the world's consumers do not construe the phrase "Made in the United States" as "*caveat emptor*." *See In re Paris Air Crash of March 3, 1974*, 399 F.Supp. 732, 746 (C.D. Cal. 1975) (United States has an interest in ensuring the airworthiness of domestic aircraft "in this very competitive world market").

The U.S. interest in actions like the present one also derives from the fact that when a defective American product is distributed here and abroad, the product can — and in this case did — injure United States citizens as well as foreign nationals:

> Defendant's alleged injurious conduct includes decisions pertaining to the hay baler's manufacture, failure to provide adequate warnings and instructions for its use, failure to take appropriate action to notify owners of known dangers in order to prevent accidents, and wanton and willful conduct. In summary, it appears that the defendant's allegedly wrongful conduct all occurred in Iowa, and it is merely fortuitous that the plaintiff's injury happened in Alberta.

*Kozoway*, 722 F.Supp. at 643. *Accord In re Paris Air Crash*, 399 F.Supp. at 737 (A distinction "should be made between the place of the wrong and that of the accident — if the wrong is in defective design or manufacture, it occurred at the time and in the place of design and manufacture; the place where it came to fruition is purely fortuitous"). Thus, providing a forum for foreign nationals injured by American products protects United States nationals as well.

Moreover, the United States has an interest in preventing corporations from using the United States as a protective haven from which they can knowingly sell products that have been contaminated with a deadly virus and which are illegal to sell in the United States. The Defendants focus on a forum's interest in protecting its citizens, but it is also in the public interest to prevent deadly misconduct within a jurisdiction.

### b. U.S. Forums Have A Local Interest In This Litigation.

The U.S. forums – whether California or Illinois – have a strong interest in adjudicating disputes about alleged intentional wrongdoing within the U.S., and in ensuring that companies within their borders are not free to intentionally ship products abroad that are known to be contaminated with deadly viruses and are illegal to sell here. Furthermore, the Defendants' argument (that Illinois and California … have at best a mere passing interest in such cases" *Defs' Mem.*, at 11) has already been rejected by the Seventh Circuit. The Seventh Circuit ruled that:

> California has an interest in the case because defendants Alpha, Bayer, and Cutter are headquartered there; defendant Bayer has its main manufacturing plant for Factor Concentrates there; and the plasma collection process took place there. **These are not trivial local interests**.

*Gullone II*, 484 F. 3d at 959 (emphasis added). Indeed, in *Pliva*, this local interest was pivotal to the Court's determination:

> Regarding local interest in resolving the controversy, Baxter's corporate headquarters in this District, the presence in this District of several of its top officials purportedly involved in the fraud causing several deaths, and Baxter's facility in Round Lake, Illinois, support the significant interest the Northern District of Illinois has in adjudicating these claims. Accordingly, this factor weighs heavily in favor of denying Baxter's *forum non conveniens* motion.

2004 WL 2011391, at *7.

Defendants' attempt to link what their expert claims as "[t]he German litigation system['s] … part [in] a greater, equally well-calibrated regulatory concept" *Zekoll Decl.* at ¶ 31, to Germany's product liability regulatory standards is conclusory. The very same link has been posited regarding the United States and other countries.

> The parts of a legal system are not merely institutional and procedural in character. Legal doctrines are parts of an operating legal system and they interact with the non-doctrinal parts as well as with other doctrines.

Richard A. Posner, *Law and Legal Theory in the U.K. and the USA* (1996) at 70.

Further, while Plaintiffs do not contend that Germany has no interest in the well-being of citizens, the fact that the German government's exclusive HIV compensation scheme expressly forbids litigation of these claims in Germany suggests that its interest is not actually in the litigation of the claims in Germany.

> German law provides that individuals with hemophilia who elect to participate in the compensation program are barred from pursuing litigation based on the same injuries. Accordingly, the law draws a clear line between those seeking the protection of the domestic program (the object of the specific interest of the Government) and those who opt for pursuing litigation. If a plaintiff opts out of the program by pursuing litigation, there is no specific interest of the German Government to have the case heard before a German court.

*Merkt Decl.*, at ¶ 8.

Given that the burden on this motion is on Defendants and their failure to demonstrate a marked interest in these claims in Germany, and given the ruling of the Seventh Circuit confirming California's local interest, this element of the public interest analysis also weighs in favor of retaining jurisdiction of these cases in the United States.

### c.      The Jury Service Question Is Not Applicable To These Cases.

Defendants have not shown that the burden on Illinois or California jurors would

be excessive or improper if the case remains in this country. The Seventh Circuit specifically

held that the jury service issue only applies where a forum has no relation whatsoever to the

litigation:

> Apart from administrative convenience, the *Gulf Oil* decision also
> notes that jury duty ought not to be imposed on the people of a
> community that has "no relation" to the litigation. As we discuss
> in a moment, however, California cannot be described that way. In
> our view, the burdens of jury duty are closely linked with the local
> interest in the litigation; they are not a separate reason to reject a
> case.

*Gullone II*, 484 F.3d at 959. As discussed above, the Seventh Circuit thus "remove[d] the jury

question from the picture." *Id.*

> Courts must resist the "understandable temptation in a busy district
> like the Southern District of New York to transfer cases that can as
> appropriately or even slightly more appropriately be tried
> elsewhere."

*Volkswagen de Mexico, S.A. v. Germanischer Lloyd*, 1991 WL 230622, *5 (S.D.N.Y. 1991)

(denying German *fnc* motion) (citing *Manu Int'l, S.A. v. Avon Products, Inc.*, 641 F. 2d 62, 65

(2d Cir. 1981)).

Furthermore, the Seventh Circuit expressly acknowledged California's local

interest in this litigation. While Illinois has a local interest in the conduct of Baxter, among other

Defendants, *see Pliva, supra*, the Seventh Circuit confirmed that California:

> has an interest in the case because defendants Alpha, Bayer, and
> Cutter are headquartered there; defendant Bayer has its main
> manufacturing plant for Factor Concentrates there; and the plasma
> collection process took place there.

*Id.* Indeed, Defendants' own expert concedes that the relevant conduct leading to this litigation

transpired in the United States: "where the defendant acted." *Zekoll Decl.*, ¶ 12.

### 3. <u>U.S. Law Will Apply To These Cases.</u>

U.S. domestic and international interests justify the application of U.S. law to all

issues in this action.  As Defendants admit, the conflicts law of the states in which the court sits —Illinois or California — determines what law applies to all or part of this controversy. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 496 (1941); *In re Sunrise Securities Litigation*, 698 F.Supp. 1256, 1261 (E.D. Pa. 1988).  These states may apply U.S. law to these cases simply because of the relationship of the U.S. to Defendants' actions and to the cases.

As discussed above, Germany's interests in this litigation are an open question. *See, e.g., Merkt Decl.*, ¶ 8.  But, even accepting *arguendo* Defendants' mantra of "the overwhelming interest of Germany in these cases," and further assuming that therefore German law controlled the predominating liability issues in this case, that factor would weigh only weakly in favor of dismissal.  "Moreover, if it is determined that German law should be applied to certain aspects of this case, this court can easily ascertain the applicable law." *Gassner v. Stotler & Co.*, 671 F. Supp. 1187 (N.D. Ill., 1987) (denying German *fnc* motion).  This court and innumerable other courts have recognized that "translating, interpreting, and applying [foreign] law" is a standard judicial function that all domestic courts, but particularly federal courts, routinely perform, and does not carry much weight in a *fnc* analysis.  *In re Bridgestone/Firestone*, 190 F. Supp. 2d at 1148 (quoting, among other cases, *Manu Int'l v. Avon Prods.*, 641 F.2d at 68 ("we must guard against an excessive reluctance to undertake the task of deciding foreign law, a chore that federal courts must often perform")).

The public interest factors on balance, like the private interest factors, clearly favor proceedings in the U.S.  Neither the private nor the public interest factors, or both sets of factors in combination, "point towards" trial in Germany.  Defendants have failed to prove that a trial in this country "would result in vexation and oppression to [them] which would far outweigh the plaintiff[s'] convenience." *Kamel*, 108 F.3d at 802.

736386.1

## V.   <u>CONCLUSION</u>

For all of the reasons discussed above, the Court should deny the motion to

dismiss on *fnc* grounds.

Dated:  November 15, 2007                     Respectfully submitted,


/s/ Nicholas Diamand
———————————————————————
                    Nicholas Diamand

STEVEN E. FINEMAN
NICHOLAS DIAMAND
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
780 Third Avenue, 48th Floor
New York, NY  10017-2024
Phone: (212) 355-9500
Fax:    (212) 355-9592

736386.1

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that copies of the foregoing Memorandum in Opposition to Forum Non Conveniens Motion and its accompanying exhibit were served on the 15th day of November, 2007 through the CM/ECF system.

/s/ Nicholas Diamand
Nicholas Diamand
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
780 Third Avenue, 48th Floor
New York, NY 10017-2024
Phone: (212) 355-9500
Fax: (212) 355-9592